CHANDLER MCKELVEY, Secretary Department of Development
You ask whether funds contained in the account mentioned in sec. 20.143(3)(ea), Stats., as renumbered by ch. 20, sec. 138, Laws of 1981, may be used for a proposed State-wide Mapping for Farmland Preservation Project.
In my opinion the answer is yes, provided that such funds are either utilized to carry out preliminary mapping functions, or provided to counties to develop or revise agriculture preservation plans.
You indicate that this proposed project is designed to provide a standardized set of farmland preservation maps for each county in the state. Standard land use classifications would be used. All maps would be placed on a standard scale, using existing state computer programs. Existing county farmland preservation maps would be utilized when possible. Where no such maps are available, the Department of Development (Department) would cause preliminary maps to be prepared under sec. 91.05, Stats. The entire proposed project is projected to be a cooperative effort between the Department, the Office of the State Cartographer, various regional planning commissions and certain counties.
This project is proposed because farmland preservation maps are not consistent in scale or categorization of information. Because of the inconsistencies, it is difficult for the Department to ascertain how much farmland is in preservation or transition areas at any given time. Once the project is completed, the standardized maps would be made available to all local, regional, state and federal agencies that provide assistance in preserving farmlands.
Section 20.143(3)(ea), Stats., authorizes the Department of Development to expend "the amounts in the schedule to carry out the preliminary mapping function under s. 91.05 and to provide funds to counties for the development of agricultural preservation plans under s. 91.65(1)." *Page 200 
The schedule now contains only one account to carry out both the preliminary mapping function described in sec. 91.05, Stats., and the agricultural preservation planning function described in subch. IV of ch. 91, Stats. Ch. 361, Laws of 1979. Those segments of the proposed project which are to be funded from this account must carry out one or both of these functions.
The Department, subject to standards prepared by the Agricultural Lands Preservation Board, is free to allocate the money contained in the account provided for in sec.20.143(3)(ea), Stats., between the two functions. The only restrictions are that monies which are used solely to develop agricultural preservation plans must be distributed "to counties," while monies which are used solely to carry out the preliminary mapping function may, but need not, be distributed to counties. See secs. 20.143(3)(ea), 91.05(1), 560.02(4), Stats.
In counties where no preliminary maps have been prepared, the activities you describe fall well within the Department's preliminary mapping functions under sec. 91.05, Stats. Under that statute, the Department is free to prepare preliminary maps of any size, using whatever methods it chooses to employ. In those counties, the Department may perform the proposed project itself or contract with the State Cartographer. Funds need not be distributed to counties in which the entire project is performed at the state level.
The question of how the project should be funded in counties where preliminary maps already exist is more difficult. Section91.05(1), Stats., is broad enough to permit remapping if the remapping is done pursuant to standards prepared by the Farmland Preservation Board. This is particularly true where the remapping would provide increased assistance in locating lands which should be preserved. Since agricultural preservation plans are subject to continual revision under sec. 91.63, Stats., any remapping which could be used under sec. 91.55, Stats., to develop a revised plan is permissible. Legal uncertainty does exist concerning the manner in which the proposed project should be funded in these counties because sec. 91.05, Stats., does not explicitly mention remapping and because that statute requires the Department to set priorities for preliminary mapping on a county-by-county basis. The implication is that remapping *Page 201 
should not occur until there is a preliminary map for each county. Where preliminary maps have already been developed, it would be preferable to provide grants to counties for the purpose of revising their plans to meet standards specified by the Department. The fact that the revisions would provide incidental benefits to the Department would not invalidate the grants.
Those portions of the proposed project which would not assist in developing revised plans under sec. 91.55, Stats., may not be funded from the account provided under sec. 20.143 (3)(ea), Stats.
BCL:FTC